0768

Peter J. ASHY and Amar International Incorporated, Respondents v. WeCARE DISTRIBUTORS, INC., and D.R.M., Inc., Appellants.

(347 S. E. (2d) 123)

Court of Appeals

*John R. Devlin, Jr.* of *Love, Thornton, Arnold & Thomason,* Greenville, *for appellants.*

*Larry D. McDonald,* Greenville, *for respondents.*

Heard June 17, 1986.

Decided Aug. 4, 1986.

SANDERS, Chief Judge:

Appellants WeCare Distributors, Inc. and D.R.M., Inc. appeal from an order of the Circuit Court denying their motion to set aside the service of the summons and complaint of respondents Peter J. Ashy and Amar International Incorporated and to dismiss this action for lack of personal

jurisdiction under Section 36-2-802 and Section 36-2-803, Code of Laws of South Carolina, 1976. We affirm.

Peter Ashy is a resident of Greenville County, South Carolina and president of Amar International, a South Carolina corporation. WeCare is a North Carolina corporation engaged in the distribution of cosmetic products. The majority of WeCare stock is held by D.R.M., a Florida holding company.

This action was instituted by Dr. Ashy and Amar for breach of a contract allegedly entered into between them and WeCare. In their complaint, Dr. Ashy and Amar allege there was a contract whereby Dr. Ashy was to travel to the Middle East at WeCare's expense to attempt to develop markets for certain cosmetic products distributed by WeCare.

The complaint further alleges: (1) the parties negotiated the contract in South Carolina over a period of several months; (2) the contract was to be performed in part by both parties in South Carolina; (3) by the contract WeCare agreed to supply services in South Carolina; (4) the parties did perform the contract in part in South Carolina over a period of months; (5) WeCare transacted business in South Carolina; and (6) WeCare was doing business in South Carolina for at least one year prior to the commencement of this action.

WeCare and D.R.M. through their attorney entered a special appearance for the sole purpose of moving to dismiss the action for lack of personal jurisdiction on the ground they "have had insufficient contact with the State of South Carolina to make them amenable to that State's jurisdiction." WeCare and D.R.M. also assert that neither company had an agent in South Carolina with authority to negotiate on their behalf and no formal contract was ever entered into by the parties; instead, "negotiations were held outside the state of South Carolina and through the mails as to the proposed terms of such a contract."

The Circuit Court denied the motion of WeCare and D.R.M. to dismiss for lack of personal jurisdiction ruling they were subject to the jurisdiction of the Court under Sections 36-2-802, 36-2-803(1)(a), 36-2-803(1)(b) and

36-2-803(1)(g).[1] WeCare and D.R.M. except to the order of the Circuit Court in three respects: (1) the evidence presented was insufficient to show WeCare and D.R.M. were "doing business" in South Carolina under Section 36-2-802; (2) the evidence presented was insufficient to show the existence of a contract under Section 36-2-803(1)(g); and (3) WeCare and D.R.M. did not have sufficient contacts with the state of South Carolina so as to make them constitutionally amenable to the courts of this state.

However, WeCare and D.R.M. failed to challenge by way of exception the ruling that personal jurisdiction was conferred by Sections 36-2-803(1)(a) and 36-2-803(1)(b). Where no exception is taken to findings of fact or conclusions of law, they become the "law of the case." *Doe v. Doe*, 286 S. C. 507, 512, 334 S. E. (2d) 829, 832 (Ct. App. 1985). Since jurisdiction properly exists under either Section 36-2-803(1)(a) or Section 36-2-803(1)(b), it is not necessary for us to address WeCare's and D.R.M.'s exceptions relating to jurisdiction under Sections 36-2-802 and 36-2-803(1)(g).[2]

Having determined that personal jurisdiction exists under Sections 36-2-803(1)(a) and 36-2-803(1)(b), we must next de-

---

[1] Section 36-2-802, Code of Laws of South Carolina, 1976, provides: "A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, doing business, or maintaining his or its principal place of business in, this State as to any cause of action." Section 36-2-803 provides in part:

> (1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's
> (a) transacting any business in this State;
> (b) contracting to supply services or things in the State;

> .   .   .   .   .

> (g) entry into a contract to be performed in whole or in part by either party in this state . . . .

[2] Even if we were to consider WeCare's and D.R.M.'s exception which alleges there was insufficient evidence to show the existence of a contract under Section 36-2-803(1)(g), we would affirm. At the pretrial stage of determination of jurisdiction, Dr. Ashy needed only to make a prima facie showing that the Circuit Court should exercise personal jurisdiction over WeCare and D.R.M. Dr. Ashy "did not have to show that he had an unassailable contract since the question before the trial court was jurisdiction to entertain the dispute rather than the ultimate determination of the parties' contract rights." *Askins v. Firedoor Corp. of Florida*, 281 S. C. 611, 615, 316 S. E. (2d) 713, 716 (Ct. App. 1984).

cide whether the decision of the Circuit Court to exercise personal jurisdiction over WeCare and D.R.M. is consonant with the constitutional requirements of due process. The question more directly posited is whether the activities of WeCare and D.R.M. within this state meet the test of "minimal contacts" announced in *International Shoe Co. v. State of Washington*, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). *See Askins v. Firedoor Corp. of Florida*, 281 S. C. 611, 316 S. E. (2d) 713 (Ct. App. 1984).

Our Supreme Court has extended jurisdiction to the furthest limits possible under Section 36-2-803. *Hammond v. Cummins Engine Co.*, 287 S. C. 200, 336 S. E. (2d) 867 (1985). While it is clearly the law in South Carolina that this statute must be construed to extend jurisdiction to the limits imposed by the due process clause, it is subject to the bounds of constitutional due process in that a party must have had such minimal contacts with South Carolina so that maintenance of the action "does not offend traditional notions of fair play and substantial justice." *Atlantic Soft Drink Co. of Columbia v. South Carolina National Bank*, 287 S. C. 228, 231, 336 S. E. (2d) 876, 878 (1985).

Courts have established the following three considerations in determining what is meant by "traditional notions of fair play and substantial justice": (1) the duration of the activity of the nonresident in this state; (2) the character and circumstances of the commission of the nonresident's acts; and (3) the inconvenience resulting to the parties by conferring or refusing to confer jurisdiction over the nonresident. *Askins*, 281 S. C. 611, 316 S. E. (2d) 713.

"[T]he length and duration of the activity of the nonresident in this State is not deemed important and need only be minimal when the plaintiff lives in the forum state and the cause of action arose out of the defendant's activities in this State." *Atlantic Wholesale Co. v. Solondz*, 283 S. C. 36, 39, 320 S. E. (2d) 720, 722 (Ct. App. 1984).

When a Circuit Court finds a non-resident to be personally subject to its jurisdiction, this finding is binding on this Court unless found to be unsupported by the evidence or influenced by an error of law. *Atlantic Soft Drink*, 287 S. C. 228, 336 S. E. (2d) 876.

Evidence supporting the finding of the Circuit Court in the instant case may be summarized as follows.

According to an affidavit filed by Dr. Ashy, he had a number of discussions with representatives of WeCare and D.R.M. in South Carolina. He asserts that during April 1983 in Greenville, South Carolina, he met with Donald Monroe, Chairman of the Board of WeCare and D.R.M., John Edwards, president of WeCare, John Holt, vice-president of WeCare and Ross Woodall, Sr., regional manager or coordinator for WeCare in South Carolina. Dr. Ashy also asserts that, on July 23 and 24, 1984, he attended a convention in Greenville organized by WeCare and D.R.M. and again met with Mr. Monroe and Mr. Woodall. At both meetings Dr. Ashy asserts he "discussed" and "negotiated" the terms of the contract between the parties. Dr. Ashy further asserts he met with Mr. Woodall in Greenville approximately twelve times in 1983 and had numerous telephone conversations with Mr. Woodall in Greenville and with Mr. Monroe in Florida.

According to an affidavit filed by Mr. Monroe, he asserts that in May 1983, D.R.M. and WeCare began contract negotiations with Dr. Ashy to market WeCare products in the Middle East. Although Mr. Monroe admits in this affidavit that a meeting took place with Dr. Ashy in Greenville on July 24, 1983, he denies the terms of the contract were discussed.

Also made a part of the record are two letters. The first letter, dated June 23, 1983, is addressed to Dr. Ashy from Mr. Monroe and is styled a "Letter of Understanding between WeCare Distributors and/or D.R.M., Inc. and Amar International, Inc., and Dr. Peter Ashy." In the letter, Dr. Ashy and Amar International are given "full power and authority to initiate negotiations on behalf of WeCare Distributors, Inc., and/or D.R.M., Inc., for the sale of its cosmetic skin products in the Middle East." The second letter, dated August 16, 1983, is addressed to Mr. Monroe from Dr. Ashy and states, "This is to confirm our acceptance of the terms stated in your Authorization letter and the subsequent addendum made verbally during our meeting on July 24, 1983."

In our opinion, these affidavits and letters are sufficient evidence of minimal contacts with South Carolina by WeCare and D.R.M. so that maintenance of the action does not offend traditional notions of fair play and substantial justice. Therefore, we conclude that the finding of the Circuit Court was not influenced by an error of law.

For these reasons, the order of the Circuit Court is

Affirmed.

SHAW and BELL, JJ., concur.