23126

Sam B. WHITE, Molly White Welter, and Ann F. White as Executrix of the Estate of Jesse A. White, Jr., Respondents v. Corinne H. STEPHENS, Appellant.

(387 S. E. (2d) 260)

Supreme Court

*Charles E. Carpenter, Jr.*, and *Frederick A. Crawford* of *Richardson, Plowden, Grier & Howser*, Columbia, *for appellant.*

*Joel W. Collins, Jr.*, and *G. Wells Dickson, Jr.* of *Collins &*

*Lacy,* Columbia, *for respondents.*

Submitted Sept. 20, 1989.

Decided Jan. 2, 1990.

TOAL, Justice:

The sole issue on appeal is whether South Carolina can exercise personal jurisdiction over Corinne Stephens ("Stephens"), a Georgia resident, in this action for breach of contract and for an accounting on an alleged constructive trust. We find that there is a lack of personal jurisdiction and, therefore, reverse.

## FACTS

Corinne Stephens ("Stephens"), a Georgia resident, is the daughter of Mabel White ("Mabel") by her first marriage. The respondents (the "White children") are the children of Jesse A. White, Sr. and the stepchildren of Mabel.[1]

After the death of her first husband, Mabel married Jesse A. White, Sr., a widower. Subsequently, in 1968, Jesse deeded his residence on Lancaster Road in Chester County to Mabel. After Jesse's death, Mabel sold the Lancaster Road property and bought a smaller house on Sunset Drive in Chester. The excess proceeds from the sale of the property were voluntarily distributed by Mabel to the White children.

On September 30, 1977, while living in Chester, Mabel executed a will bequeathing the Sunset Drive property to the White children. On June 17, 1982, Mabel executed a Power of Attorney and appointed Stephens as her attorney-in-fact. The Power of Attorney was filed in the Chester County Courthouse, but was never exercised in South Carolina.

In May 1983, Mabel moved to Georgia. On October 7, 1983, Mabel sold the Sunset Drive property. Although Stephens did not sign any documents involved in the sale, she did attend the closing and was involved with the sale of furniture from the house. A check in the amount of $51,219.84 was issued from the attorneys' escrow account to Mabel and

---

[1] Ann White is the executrix for Jesse A. White, Jr. and is a resident of North Carolina. The other two respondents are residents of South Carolina.

was deposited in a bank in Georgia. The White children claim that an oral agreement was made between Stephens and themselves providing that the sale proceeds would be held in trust. The interest from the trust was to be used for the health, care and maintenance of Mabel. Upon Mabel's death, the principal and any accrued interest was to be distributed among the White children. This alleged trust agreement is the source of the underlying controversy in this action.

The White children claim that they were legally and equitably entitled to these funds under Mabel's 1977 will. In 1985, however, Mabel executed a new will in Georgia leaving her entire estate to Stephens. Mabel died on August 13, 1987, and her will was probated in Georgia. The White children made no claim against Mabel's estate.

On June 29, 1988, the White children filed this action for breach of contract and for an accounting of the alleged trust funds. Stephens filed a Motion under Rules 12(b)(2) and 12(b)(6) of the South Carolina Rules of Civil Procedure to dismiss the case for lack of personal jurisdiction. The trial court denied the Motion on the grounds that Stephens had established sufficient minimum contacts with South Carolina. The trial court noted that Stephens had attended the closing and tended to the sale of Mabel's furniture; that the Power of Attorney, executed and recorded in South Carolina, authorized Stephens to transact business in this state and that Stephens had made two trips to South Carolina since 1983. The Order also cites S. C. Code Ann. § 36-2-803(1)(a) (Law Co-op. 1976) which provides that "a court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the persons transacting any business in this state...."

## DISCUSSION

### *General*

The party seeking to invoke personal jurisdiction ■■ against a nonresident by utilization of our long-arm statute has the burden of establishing jurisdiction. *McComb v. Tiburon Aircraft, Inc.*, 276 S. C. 683, 281 S. E. (2d) 482 (1981). At the pretrial stage of determination of jurisdiction, the plaintiff needs only to make a *prima facie* showing

of jurisdiction by his pleadings and affidavits that the trial court should exercise jurisdiction. *Askins v. Firedoor Corp. of Florida,* 281 S. C. 611, 316 S. E. (2d) 713 (Ct. App. 1984); *Fields v. INA Filtration Corp.,* 292 S. C. 614, 358 S. E. (2d) 160 (Ct. App. 1987).

The determination of whether a court may exercise personal jurisdiction over a nonresident involves a two step analysis. First, in order for the courts to have statutory authority to exercise jurisdiction, the nonresident's conduct must meet the requirements of South Carolina's long-arm statute. Second, the nonresident must have sufficient contacts with South Carolina so that the constitutional standards of due process are not violated. Stephens argues that her conduct does not fall within the long-arm statute and that she has no contacts with South Carolina upon which personal jurisdiction may be based. We agree.

1. *Long-Arm Statute*
South Carolina's long-arm statute provides in pertinent part:

> (1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's
> (a) transacting any business in this State;
> . . . .
> (g) entry into a contract to be performed in whole or in part by either party in this state.

S. C. Code Ann. § 36-2-803 (Law Co-op. 1976).
The trial court found that the White children had made a showing of jurisdiction by the pleadings and affidavits. The lower court also cited § 36-2-803(1)(a) in support of its ruling. The Order does not mention subsection (g); however, both parties discussed it in their briefs.

a. Transacting Business
Stephens argues that her conduct does not constitute the transaction of business in South Carolina. We agree. The pleadings and affidavits show that Stephens' only contacts with this state included the following:

(1) She attended the closing on the sale of her mother's

home.

(2) She tended to the sale of some of her mother's furniture.

(3) She was given a Power of Attorney which authorized her to transact business in South Carolina. It was executed and recorded here, but was never exercised in this state.

(4) She made two trips to South Carolina since 1983 without explaining the purpose of the trips.

(5) She allegedly made an oral trust agreement with the White children.

The only actions that could possibly constitute the "transaction of business" in South Carolina for the purposes of the long-arm statute would be the receipt of the Power of Attorney and the making of the alleged oral trust agreement.

Although the Power of Attorney was executed and recorded in South Carolina, it was never exercised in this state. Nor was it alleged that Stephens made the oral agreement as the Attorney-in-Fact for Mabel. Therefore, we find that the mere receipt of a Power of Attorney does not constitute the transaction of business for jurisdictional purposes.

In addition, we find that the making of the oral trust agreement could not constitute the transaction of business in South Carolina since it was not alleged that the contract was entered into or that it was to be performed in this state.

### b. Entry Into a Contract

To find personal jurisdiction based on § 36-2-803 ██ (1)(g), it is not necessary to demonstrate a binding contract existed; but rather, the White children need only make a *prima facie* showing that the trial court should exercise jurisdiction. *Askins v. Firedoor Corp. of Florida,* 281 S. C. 614, 316 S. E. (2d) 713 (Ct. App. 1984). Stephens argues that they failed to make this showing. We agree.

The Complaint alleges that an agreement was made between the parties at the request of the defendant. It does not allege that the contract was formed in South Carolina or that it was to be performed in this state. Stephens argues that the only way such an agreement could have been made

would have been over the phone when she was in Georgia. She also claims that the contract could not have been performed in South Carolina because the funds are in Georgia. She further argues that the White children fail to allege any consideration for the agreement or the legal right of Stephens and the White children to make such an agreement.

We find that a *prima facie* showing of a contract to be performed in the state was not made. Therefore, we find that the White children failed to make the requisite showing to invoke jurisdiction under the long-arm statute.

### 2. *Due Process*

Before personal jurisdiction may be exercised over a nonresident, due process requires that it be determined whether he purposefully established "minimum contacts" with this State such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 105 S. Ct. 2174, 85 L. Ed. (2d) 528 (1985); *International Shoe Co. v. State of Washington*, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U. S. 235, 78 S. Ct. 1228, 2 L. Ed. (2d) 1283 (1958).

Our courts have established four factors which may be considered in reaching this determination: (1) the duration of the activity of the nonresident in this state; (2) the character and circumstances of the commission of the nonresident's acts; (3) the inconvenience resulting to the parties by conferring or refusing to confer jurisdiction over the nonresident; and (4) the State's interest in exercising jurisdiction. *Colite Industries v. G. W. Murphy Construction Co.*, 297 S. C. 426, 377 S. E. (2d) 321 (1989); *Atlantic Soft Drink Co. v. South Carolina National Bank*, 287 S. C. 228, 336 S. E. (2d) 876 (1985).

As noted above, the duration of Stephens' activities in this state was minimal. Although a single act may support jurisdiction, it must create a "substantial connection" with the forum. *Burger King, supra.* Stephens' activities do not indicate that she purposefully availed her-

self of jurisdiction nor do they create a substantial connection with South Carolina. In regard to the character and circumstances of her acts, it was not established that the alleged agreement was formed or that it was to be performed in South Carolina. In addition, the refusal to exercise jurisdiction will not result in extreme inconvenience. Two of the White children reside in South Carolina and one resides in North Carolina. Stephens and the funds involved in the controversy are located in Georgia. While South Carolina has an interest in providing redress for its citizens, that interest is diminished when no business was transacted in this state and any contract formed was not to be performed in this State.

Therefore, we find that the facts do not support the exercise of personal jurisdiction over Stephens under the long-arm statute or under a minimum contacts analysis.

For the reasons discussed above, the lower court is reversed.

GREGORY, C. J., and HARWELL, CHANDLER and FINNEY, JJ., concur.