0269

ATLANTIC WHOLESALE COMPANY, INC., d/b/a The Gold Exchange,
Respondent, v. Gary A. SOLONDZ, Appellant.

(320 S. E. (2d) 720)

Court of Appeals

*David W. Keller, Jr.,* of *McGowan, Keller, Eaton, Brodie &
Elmore,* Florence, *for appellant.*

*Samuel J. Abrams,* Sumter, *for respondent.*

Heard June 27, 1984.

Decided Sept. 14, 1984.

GOOLSBY, Judge:

Gary A. Solondz, a New York resident, appeals from a judgment rendered in favor of the respondent Atlantic Wholesale Co., Inc., following a jury trial in an action alleging a breach of an oral contract to purchase silver. Solondz maintains that the trial court lacked personal jurisdiction over him and that the contract was unenforceable because of the statute of frauds. We conclude that the trial court had jurisdiction under this state's long arm statute and that the statute of frauds did not bar enforcement of the alleged oral contract. Accordingly, we affirm.

Atlantic Wholesale, whose principal place of business is Florence, South Carolina, buys and sells gold and silver under the name of The Gold Exchange. In a complaint served upon Solondz pursuant to Section 36-2-803 of the South Carolina Code of Laws (1976), Atlantic Wholesale alleged that at the request of Solondz it purchased a quantity of silver for his account at an agreed price, that Solondz subsequently refused to pay for it, and that Solondz's breach of the contract caused it to sustain damages in the amount of $8,323.00.

Solondz made a special appearance and moved to dismiss the complaint claiming that he lacked sufficient contact with South Carolina on which its courts could constitutionally base jurisdiction. The trial court, however, denied his motion. Solondz then answered the complaint. In his answer, Solondz denied the existence of the contract and asserted the statute of frauds. Upon the trial of the case, a jury returned a verdict in favor of Atlantic Wholesale in the amount of $8,328.00. The trial court denied Solondz's motions for directed verdict, judgment *non obstante veredicto* and new trial based upon the ground that the statute of frauds barred the enforcement of the contract in question.

## I. Jurisdiction

Solondz first questions the jurisdiction of South Carolina courts to entertain Atlantic Wholesale's action. The trial court found that the alleged contract was formed in this state and that a part of it was to be performed here.

We agree with the trial court that Solondz's alleged act of ordering silver from Atlantic Wholesale by telephone subjected Solondz to the jurisdiction of South Carolina's courts. *Askins v. Firedoor Corp. of Florida*, 316

S. E. (2d) 713 (S. C. App. 1984); *Hardy v. Pioneer Parachute Co., Inc.*, 531 F. (2d) 193 (4th Cir. 1976); *see Lackey v. Treadwell*, 316 S. E. (2d) 724 (S. C. App. 1984). The evidence supports the trial court's finding and no error of law was involved in reaching it.

An affidavit given by Solondz in support of his motion to dismiss shows that he is a resident of New York and that he has never been present in South Carolina except to pass through on his way elsewhere. According to the affidavit, Solondz's contacts with Atlantic Wholesale resulted from his reading of an advertisement published in a magazine distributed through the mails to him in New York.

On the other hand, testimony from two Atlantic Wholesale employees at the hearing on the motion to dismiss indicates that on at least four different occasions prior to the alleged transaction that gave rise to the instant action, Solondz ordered precious metal from Atlantic Wholesale by telephone and, after paying for it, had the metal delivered to him in New York by Atlantic Wholesale. Their testimony further shows that on January 23, 1980, Solondz again telephoned and, on that date, purchased 300 ounces of silver at $43.26 per ounce. After Solondz placed his order, their testimony reveals, Atlantic Wholesale purchased the silver from a supplier in Minnesota and took delivery of the silver in South Carolina where it was to be held for shipment to New York until Solondz paid Atlantic Wholesale in South Carolina the amount he owed for the silver.

Section 36-2-803 of the Code, which is South Carolina's "long-arm statute," provides in part as follows:

(1) A court may exercise personal jurisdiction over a person who acts directly . . . as to a cause of action arising from a person's

. . . .

    (g) entry into a contract to be performed in whole or in part by either party in this State. . . .

Here, the evidence presented at the hearing on the motion to dismiss clearly shows that Solondz entered into a contract that was to be partly performed in South Carolina. The silver was to be shipped to Atlantic Wholesale in South Carolina and held by Atlantic Wholesale in this state until it received

payment in South Carolina from Solondz. *See Askins v. Fire-door Corp. of Florida, supra.*

But Solondz argues that the trial court's decision to exercise personal jurisdiction over him is at odds with the requirements of the due process. *See International Shoe Co. v. Washington,* 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). We do not think so. Solondz's purposeful contacts "with South Carolina are clearly sufficient to satisfy the constitutional test for minimal contacts with this State." *Askins v. Firedoor Corp. of Florida,* 316 S. E. (2d) at 717.

We realize that Solondz has engaged in little activity in South Carolina; however, as we pointed out in *Askins,* "the length and duration of the activity of the nonresident in this State is not deemed important and need only be minimal when the plaintiff lives in the forum state and the cause of action arose out of the defendant's activities in this State." 316 S. E. (2d) at 717.

In this case, as in *Askins,* which also involved a breach of contract action, the foreign defendant failed to prove the existence of any circumstances that either impose an undue hardship upon him to defend the action in South Carolina or make it more unfair for him to defend the suit in South Carolina than it would be for the resident plaintiff to prosecute the case in New York.

## II. Statute of Frauds

Solondz's main argument is directed at the failure of the trial court to grant his motions for directed verdict, judgment *non obstante veredicto,* and new trial on the ground that the statute of frauds barred the alleged contract's enforcement. The trial court did not so view the statute.

Evidence similar to that offered at the hearing on the motion to dismiss was adduced at trial. Solondz became a customer of Atlantic Wholesale in 1979 and thereafter made several purchases. On January 23, 1980, Solondz called Atlantic Wholesale from New York and received a quotation on silver bullion. Solondz then bought 300 ounces of silver for total price of $12,978.00

Atlantic Wholesale immediately contacted United Precious Metal (UPM) in Minneapolis, Minnesota, and purchased the silver. UPM shipped the silver to Atlantic Wholesale who paid

for it. Atlantic Wholesale placed the silver in its vault while it awaited payment from Solondz.

An Atlantic Wholesale employee testified that when Solondz's payment failed to come he telephoned Solondz in reference to his account. The employee stated that he told Solondz about the fall in silver prices and that he asked Solondz what he wanted Altantic Wholesale to do with his silver. Solondz, he said, asked him to wait awhile to see if the market would strengthen and to call him six days later to learn whether he wanted Atlantic Wholesale to sell the silver or to send it to him in New York.

Solondz thereafter refused to pay for the silver. Atlantic Wholesale then sold it for $4,650.00, sustaining a loss of $8,328.00.

Solondz never signed a writing memorializing the contract.

Section 36-2-201 of the South Carolina Code of Laws (1976), the statute of frauds applicable to sales of goods, provides in part:

> (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. . . .

In the instant case, we obviously have a contract for the sale of goods that falls squarely within the statute. Unless Solondz was estopped to assert the statute as a defense, as Atlantic Wholesale argues, the verdict cannot stand.

Before the estoppel doctrine can be invoked, however, there must be "competent proof of the existence of the oral contract." *Id; Anderson v. KFBB Broadcasting Corp.*, 143 Mont. 423, 391 P. (2d) 2 (1964); *Dangerfield v. Markel, supra.* Here, the evidence offered at trial by Altantic Wholesale, which we outlined above, fairly establishes the existence of the oral contract at issue.

While the authorities are in conflict as to whether equitable estoppel may be invoked to bar the defense of the statute of frauds [ANDERSON, UNIFORM COMMERCIAL CODE

§ 22-201:233 at 125-26 (3d ed. 1982)], the rule appears to be in South Carolina that estoppel may be so used. In *Collins Music Co. v. Cook,* 316 S. E. (2d) 418, 420 (S. C. App. 1984), a case involving the general statute of frauds contained in Section 32-3-10 of the Code, this court addressed the issue of whether the doctrine of estoppel could bar raising the defense of statute of frauds. There, we said:

> Our Supreme Court has acknowledged that, in a proper case, the doctrine of estoppel may be invoked to prevent a party from asserting the statute of frauds. *See Florence Printing Co. v. Parnell,* 178 S. C. 119, 182 S. E. 313 (1935). In order to overcome the statutory requirement of a writing however, the party asserting the estoppel must show that he has suffered a definite, substantial, detrimental change of position in reliance on the contract, and that no remedy except enforcement of the bargain is adequate to restore his former position. It is not sufficient to show merely that he has lost an expected benefit under the contract.

*See also* ANDERSON UNIFORM COMMERCIAL CODE § 2-201:234 at 126 (3d ed. 1982); 73 Am. Jur. (2d) *Statute of Frauds* § 567 AT 205-06 (1974); 37 C.J.S. *Frauds, Statute of* § 246b at 749-50 (1943); *Dangerfield v. Markel,* 222 N. W. (2d) 373 (N. D. 1974).

*Collins Music* and the case it relies on were, we realize, actions in equity. The action here is at law. Still, "estoppel to assert the statute of frauds as a defense is available in action at law" despite the equitable origins of the doctrine of estoppel. 37 C.J.S. *Frauds, Statute of* § 246b at 751 (1943).

In our review, Atlantic Wholesale met the requirements of the rule governing the application of the doctrine of estoppel where the defense of the statute of frauds is asserted. Atlantic Wholesale suffered a detrimental change in position because, based on its agreement with Solondz, it ordered from UPM 300 ounces of silver for which it paid UPM a considerable sum. In paying UPM $12,978.00 for silver that soon dropped $8,328.00 in value, Atlantic Wholesale lost more than an expected benefit in reliance upon Solondz's word.

Because Solondz was estopped to deny the validity of his oral agreement with Atlantic Wholesale to purchase 300

ounces of silver at $43.26 per ounce, the statute of frauds constituted no defense to Atlantic Wholesale's action based upon the oral agreement. The judgment from which Solondz appeals is therefore

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.